IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOHN DOE,                                  :

      Plaintiff,                         :

v.                                         :          Civil Action No. GLR-19-2575

COMMUNITY COLLEGE OF                       :
BALTIMORE COUNTY, et al.,
                                           :
      Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Community College of Baltimore County ("CCBC"), Richard Lilley, Scott Eckhardt, Eric Washington, Sarah Morales, and the Public Safety Office's Motion to Dismiss Plaintiff's Complaint (ECF No. 13).[1] This action arises from CCBC's decision to temporarily remove Plaintiff from campus amid allegations that he was harassing a professor. The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

---

[1] Also pending before the Court is Plaintiff's Motion to File Under Pseudonym (ECF No. 6) and Defendants' Motion to Strike or Opposition to Plaintiff's Supplemental Motion to File Under Pseudonym (ECF No. 23). Because the Court will grant the Motion to Dismiss, these motions will be denied as moot.

# I.    BACKGROUND[2]

Plaintiff was a CCBC student from the fall of 2013 to, at least, the fall of 2016. (Defs.' Mot. Dismiss Pl.'s Compl. ["Defs.' Mot. Dismiss"] at 2–3, ECF No. 13-1). Defendant Sarah Morales was a philosophy professor, student advisor, and faculty advisor of CCBC's Philosophy Club. (Id. at 4–5).

During the spring of 2016, Plaintiff was enrolled in one of Morales' philosophy courses and regularly spoke to her during "critical thinking appointments" and at Philosophy Club meetings. (Redacted Compl. ¶¶ 60–61, 65, ECF No. 1). Throughout the semester, Plaintiff's interactions with Morales were a bit odd. For example, Plaintiff posed an in-class "thought experiment" involving Morales and a murder; wrote the name of a city where Morales once lived on the chalkboard then questioned her about whether the name meant anything to her and whether his actions bothered her; solicited Morales' opinion on a recent legal decision about bestiality; drew pictures of something Morales disliked on the back of an exam; and expressed concerns about Morales' skills as a professor and as the Philosophy Club leader.[3] (Id. ¶¶ 69–78, 81–82, 128–129).

On September 2, 2016, Plaintiff emailed Morales to ask if she was available to meet with him the following week during her office hours so he could share his concerns regarding her leadership role in the Philosophy Club. (Id. ¶¶ 81–89; Defs.' Mot. Dismiss

---

[2] Unless otherwise noted, the Court takes the following facts from Plaintiff's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

[3] The Complaint does not identify what Plaintiff drew on the back of the exam.

Ex. 2 ["Morales Emails"] at 3, ECF No. 13-3).[4] Morales responded to Plaintiff's email but did not confirm that she would be available during her office hours. (Morales Emails at 2–3). When Plaintiff went to visit Morales on September 6, 2016, he learned that she was not in her office. (Id. at 2; Redacted Compl. ¶ 86).

Plaintiff emailed Morales later that afternoon, chastising her for her failure to communicate and describing her as "wishy-washy," "unprofessional," and "inconsiderate." (Morales Emails at 2). Plaintiff told Morales that he would be "knocking on [her] office door tomorrow sometime after 11, during [her] office hours, to try and resolve this." (Id.; Redacted Compl. ¶¶ 87–89). Morales responded to Plaintiff's email, apologizing for the miscommunication and informing Plaintiff that "[her] office hours and email are not appropriate venues for personal attacks on [her]." (Morales Emails at 1) (emphasis in original). She noted that "this [was] not the first time [he's] attacked [her] professionalism or [her] teaching approach" and that she was "not professionally required to entertain [his]

---

[4] While the Court generally does not consider extrinsic evidence when resolving a Rule 12(b)(6) motion, see Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011), there are two exceptions that are relevant here. First, the Court may consider documents attached to the complaint and the motion to dismiss, so long as they are integral to the complaint and are authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994).

Here, Plaintiff references email conversations he had with Morales, some of which are attached as exhibits to his Complaint. However, Plaintiff conspicuously omitted the email conversations he had with Morales immediately preceding his removal, which are related to CCBC's decision to remove him from campus. (See Morales Emails). Because the emails attached to Defendants' Motion are referenced in and attached, in part, to the Complaint and are not challenged on authenticity grounds, the Court will consider the emails without converting Defendants' Motion to one for summary judgment.

personal concerns," since she was no longer his professor. (Id.). Morales told Plaintiff not to come to her office and informed Plaintiff that she would reassign him to an advisor "whose methodology fit[] better with [his] learning style." (Id.).

Despite Morales' email, Plaintiff went to her office on September 7, 2016, and during the conversation, became upset and disclosed that he experienced anxiety, depression, and thoughts of self-harm. (Redacted Compl. ¶¶ 89–103). Morales completed a Student Incident Report about her conversation with Plaintiff and requested that a Public Safety officer be present at the Philosophy Club meeting on September 8, 2016 out of a concern for Plaintiff's presence. (Id. ¶¶ 104, 112). Morales also informed the Public Safety officers that Plaintiff would often become loud, aggressive, belligerent, and emotional during his meetings with her. (Id. ¶ 117).

On September 8, 2016, Morales arranged a meeting with Plaintiff, where he was confronted by two Public Safety officers and Defendant Eric Washington, the Student Conduct Officer. (Id. ¶¶ 2, 6–9). Washington informed Plaintiff that he posed a threat to campus safety and issued Plaintiff a No Trespass Order (the "Order"), banning him from campus for four days while CCBC investigated Plaintiff's behavior. (Id. ¶¶ 5–7). Washington also directed Plaintiff to call Defendant Scott Eckhardt, Director of Student Conduct, to discuss the Order in greater detail. (Id. ¶ 7). Washington then questioned Plaintiff about his computer usage before the Public Safety officers searched Plaintiff for weapons and escorted him off campus. (Id. ¶¶ 8–12).

Plaintiff, accompanied by this mother, returned to campus on September 12, 2016 for a meeting with Eckhardt. (Id. ¶ 18). Eckhardt informed them that Plaintiff was asked to

leave campus because of his behavior toward Morales, but that his office ultimately concluded that Plaintiff had not violated CCBC's code of conduct. (Id. ¶¶ 19–20).

Following Eckhardt's determination that Plaintiff had not committed any conduct violations, Plaintiff emailed CCBC's president, the director of public safety, and other school officials requesting an explanation for his "mistreatment." (Id. ¶ 25). Defendant Richard Lilley, Vice President of Enrollment and Student Services, responded to Plaintiff's inquiry, indicating that "he 'thoroughly researched [Plaintiff's] concerns and reviewed the actions taken by Public Safety as well as by College Life staff' and approved all of the steps and procedures that Mr. Eckhardt, Mr. Washington, and the Public Safety Office made." (Id. ¶ 26) (alteration in original).

Shortly thereafter, Plaintiff filed a complaint with the Department of Education's Office of Civil Rights ("OCR").[5] (Id. ¶ 36). In response to Plaintiff's OCR complaint, CCBC cited concerns about his conduct during classes and meetings with Morales. (Id. ¶¶ 37, 45). The OCR investigator ultimately concluded that CCBC had not committed any civil rights violations. (Id. ¶ 46). Plaintiff appealed the decision, which was affirmed. (Id.).

On September 6, 2019, Plaintiff sued Defendants and filed a Request to File Under Pseudonym. (ECF Nos. 1, 6). The Complaint does not identify any causes of action but seems to assert claims for discrimination and retaliation in violation the Section 504 of the Rehabilitation Act, 29 U.S.C. § 701, et seq. (2018). (Redacted Compl. ¶¶ 37, 151, 154). Plaintiff seeks declaratory and injunctive relief, damages for loss of potential employment, and expungement of "slanderous records." (Id. ¶¶ 151–55).

---

[5] Plaintiff fails to identify the allegations raised in his OCR complaint.

On November 7, 2019, Defendants filed a Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim and an Opposition to Plaintiff's Request to File Under Pseudonym.[6] (ECF Nos. 13, 14). Plaintiff filed an Opposition to Defendants' Motion to Dismiss and a Supplemental Motion to File Under Pseudonym on November 25, 2019. (ECF Nos. 20, 21). On December 9, 2019, Defendants filed a Reply in support of their Motion to Dismiss and a Motion to Strike or Opposition to Plaintiff's Supplemental Motion to File Under Pseudonym. (ECF Nos. 22, 23). Plaintiff filed an omnibus Opposition to Defendants' Motion to Strike and Reply in support of his Supplemental Motion on December 23, 2019. (ECF No. 24). Defendants filed a Reply in support of their Motion to Strike on January 6, 2020. (ECF No. 25).

## II.   DISCUSSION

### A.   <u>Motion to Dismiss</u>

#### 1.   Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243–44 (4th Cir. 1999) (quoting <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that

---

[6] Defendants also assert that Plaintiff's Complaint should be dismissed for naming improper parties—e.g., the Public Safety office and CCBC itself—and failing to comply with pleading requirements. Because the Court concludes that Plaintiff has failed to state a claim, the Court need not consider these arguments.

is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any

possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB–12–969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted). "While pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" Weller v. Dep't of Soc. Servs. for the City of Balt., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)).

### 2.    Analysis

Pursuant to Section 504 of the Rehabilitation Act of 1973 (the "Act"), "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in . . . any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Act also prohibits retaliation against individuals who report discriminatory conduct. Id.

Plaintiff alleges that Defendants discriminated against him solely on the basis of his disability by temporarily removing him from campus, and that Defendants' stated reasons for doing so—his interactions with Morales and illicit computer usage—are pretextual justifications. Plaintiff also contends that Defendants retaliated against him for filing an OCR complaint by slandering him with discussions of bestiality and murder. The Court considers each claim in turn.

8

### a.   Section 504 Discrimination Claim

To state a claim for discrimination under § 504, a plaintiff must allege: "(1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the . . . benefit due to discrimination solely on the basis of the disability." Wood v. Md. Dep't of Transp., 732 F.App'x 177, 182 (4th Cir. 2018) (internal quotations omitted) (quoting Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264–65 (4th Cir. 1995)).

At this stage, Defendants do not challenge whether Plaintiff has a disability. However, Defendants argue: first, that Plaintiff was not otherwise qualified to participate in CCBC's program because his behavior failed to meet standards of participation; second, that Plaintiff was not excluded from a college program but was only temporarily restricted from campus because of reasons unrelated to his disability; and third, the individually named Defendants are not federally-funded programs or activities within the meaning of the Act. The Court agrees.

To be qualified for the benefit in question—here, participation in a federally-funded academic program—a plaintiff must demonstrate that, with or without modification to rules and policies, he satisfies the program's participation requirements. 42 U.S.C. § 12131(2) (2018); see also Adams v. Montgomery Coll. (Rockville), 834 F.Supp.2d 386, 392 (D.Md. 2011). The Fourth Circuit permits colleges to establish essential health and safety requirements as part of their technical requirements. See Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 463 (4th Cir. 2012) (recognizing "professionalism" to be an essential requirement of the program based on the school's professional judgment).

Consequently, a student with a disability must be able to meet both the academic and technical requirements to be deemed qualified for participation. See Class v. Towson Univ., 806 F.3d 236, 245–46 (4th Cir. 2015).

Here, CCBC "has established rules of conduct that must be followed, as the College seeks to ensure that the campus environment is safe, inviting and nurturing." (Redacted Compl. Ex. K ["CCBC General Order"] at 1, ECF No. 1-11). In order to participate in CCBC's programs and activities, students must adhere to these rules. (Id.). Students who fail to adhere to the rules or who engage in disruptive behavior "may be directed to either leave College property . . . or face sanctions under Maryland law, the student Code of Conduct or the Employee Handbook." (Id.).

Despite referencing CCBC's code of conduct in his Complaint, Plaintiff fails to allege facts demonstrating that he was qualified to participate in CCBC's academic program with or without modification to its rules. To the contrary, Plaintiff's Complaint alleges facts supporting CCBC's initial assessment that Plaintiff may have violated CCBC's code of conduct by, for example, personally attacking Morales and defying Morales' request that Plaintiff refrain from visiting her office following their September 6, 2016 email exchange.

In addition to being qualified, a plaintiff alleging discrimination under the Act must also show that he was excluded from a program solely because of his disability. See Wood, 732 F.App'x at 182; Mason v. Bd. of Educ., No. WMN-10-3143, 2011 WL 89998, at *3 (D.Md. Jan. 11, 2011). Plaintiff fails to allege facts establishing that he was excluded or that the exclusion was based solely on his disability.

Plaintiff was issued a No Trespass Order banning him from CCBC's campus for four days pending an investigation into his behavior. Temporary removals, resulting in temporary exclusion from school, do not inherently violate Section 504. See Mason, 2011 WL 89998, at *3 (finding five-day suspension does not implicate protections afforded by Section 504). Moreover, "bad faith" or "gross misjudgment" must be shown before a § 504 violation can be sustained in cases involved disabled students. See, e.g., Sellers by Sellers v. Sch. Bd. of City of Manassas, Va., 141 F.3d 524, 529 (4th Cir. 1998).

Here, Plaintiff alleges, for example, that Washington "recklessly search[ed] for conduct violations," that Eckhardt "pretended that [he] was forced off campus due to frequently sending emails to the professor and making weekly visits to her office," and that Morales lied when she reported that he oftentimes became "loud," "aggressive," and "belligerent." (See Redacted Compl. ¶¶ 4, 19, 117). However, even accepting these allegations as true, they fail to rise to the level of "bad faith" or "gross misjudgment" contemplated by the Fourth Circuit's ruling in Sellers.

Even assuming that Plaintiff's four-day ban from CCBC's campus constituted an exclusion actionable under Section 504, Plaintiff ultimately fails to allege facts demonstrating that CCBC's decision was based solely on his disability. As Plaintiff acknowledges, CCBC offered a nondiscriminatory reason for temporarily banning him from campus: "harassing/threatening behavior." (Redacted Compl. ¶ 121). In his Complaint, Plaintiff also admits to the vast majority of the incidents that CCBC cited in support of its decision to temporarily ban him: he went to Morales' office despite being told not to, (id. ¶¶ 87–89); he became upset, which resulted in Morales filing an incident

report, (id. ¶¶ 96–98); he had previously asked Morales about bestiality and used her in a thought experiment about murder, (id. ¶¶ 70–71, 128); he left a note and drew a picture of something Morales disliked on an exam, (id. ¶¶ 129); he wrote Morales multiple email critiquing her performance, (Redacted Compl. Ex. J ["Plaintiff Emails"] at 10–11, ECF No. 1-10);[7] and he noted that Morales was concerned about him and requested that Public Safety officers be present at a club meeting, (Redacted Compl. ¶ 112). Based on CCBC's proffered explanation for temporarily banning Plaintiff from campus and Plaintiff's admission that he engaged in the majority of the behavior that CCBC cited as "harassing/threatening," the Court concludes that Plaintiff has failed to plead that he was excluded from CCBC's program solely because of his disability.

Finally, Plaintiff cannot maintain his Section 504 claims against Defendants Lilley, Eckhardt, Washington, and Morales, who have been sued in their individual capacities, because there is no individual liability for Section 504 violations. See A.B. v. Balt. City Bd. of Sch. Comm'rs, No. WMN-14-3851, 2015 WL 4875998, at *6 (D.Md. Aug. 13, 2015) (explaining that there is no individual capacity liability under Section 504 and that suits against school officials in their official capacities are merely redundant of claims against the university and, therefore, equally unsustainable).

In sum, the Court concludes that Plaintiff has failed to state a claim for discrimination in violation of Section 504 because Plaintiff has not alleged facts demonstrating that he was qualified to participate in CCBC's academic program and that

---

[7] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

he was excluded from CCBC's program solely because of his disability. Moreover, the individually named Defendants are not amenable to suit under Section 504 in their individual or official capacities and are entitled to dismissal.

### b.   Section 504 Retaliation Claim

To establish retaliation under Section 504, a plaintiff must allege: "(1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." Wright v. Carroll Cty. Bd. of Educ., No. 11-CV-3103, 2013 WL 4525309, at *18 (D.Md. Aug. 26, 2013) (citing Hooven–Lewis v. Caldera, 249 F.3d 259, 272 (4th Cir. 2001)). Under the burden shifting framework of McDonnell Douglas, if a legitimate non-retaliatory reason for the adverse action exists on the face of a complaint, then a plaintiff must also allege facts demonstrating that the proffered reason is a pretext for retaliation.[8] See Miller v. CSX Transp., Inc., No. GJH-18-2022, 2019 WL 1992105, at *4 (D.Md. May 3, 2019). Moreover, facts alleging retaliation must be "materially adverse" and beyond "trivial harms" and "minor annoyances." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty., 819 F.3d 69, 78 n.7 (4th Cir. 2016).

Filing an OCR complaint is a protected activity, see Feminist Majority Found. v. Hurley, 911 F.3d 674, 694 (4th Cir. 2018), and a school's failure to comply with OCR regulations could result in revocation of federal financial assistance, see 34 C.F.R. § 100.8 (2020). However, a school does not retaliate against an individual for filing an OCR

---

[8] See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

complaint when the school makes a public statement that challenges the veracity and credibility of that OCR complaint. Hurley, 911 F.3d 698.

Plaintiff alleges that Defendants retaliated against him during the OCR investigation by "lying about [his] conduct during class sessions, Philosophy Club meetings, and during office meetings with Sarah Morales," thereby "slandering [him] with accusations they knew were false to shame and inflict emotional distress." (Redacted Compl. ¶ 37). Plaintiff further contends that Defendants discussed bestiality and his murder "thought experiment" in the OCR investigation to slander him. These allegations fall woefully short of stating a claim for retaliation under Section 504 for two reasons.

First, Plaintiff fails to allege that he suffered an adverse action. An adverse action is action that would dissuade a "reasonable [person] from making or supporting a charge of discrimination." Burlington, 548 U.S. at 60. While defamation of an individual's character or reputation may arguably constitute an "adverse action" in certain circumstances, this is not one of them because Plaintiff has not adequately alleged that he was defamed. A defamatory statement must be, at minimum, false. See Olukoya v. Sowore, No. TDC-18-2922, 2019 WL 3501567, at *3 (D.Md. Aug. 1, 2019) (identifying falsity among the elements plaintiff must allege to establish defamation under Maryland law). Plaintiff fails to allege facts demonstrating the falsity of Defendants' statements.

As to Defendants' statements regarding Plaintiff's conduct in class and at meetings, Plaintiff alleges, in a wholly conclusory manner, that Defendants lied to the OCR investigator. Although the Court must accept the factual allegations in the Complaint as true and construe them in Plaintiff's favor, Albright, 510 U.S. at 268, the Court is not

14

obligated to accept as true unsupported factual allegations, Iqbal, 556 U.S. at 678. Plaintiff's conclusory allegation that Defendants lied about his conduct in various academic settings in order to slander him is wholly insufficient to establish the falsity of Defendants' statements, let alone defamation.

Equally untenable is Plaintiff's claim that Defendants discussed bestiality and his murder "thought experiment" in the OCR investigation to slander him. In his Complaint, Plaintiff admits that he discussed bestiality with Morales and posed the murder "thought experiment" to his entire class. Because Plaintiff admits that he made those statements, it is unclear to this Court how Defendants slandered or otherwise defamed Plaintiff by repeating those statements to the OCR investigator.

In sum, Plaintiff has not adequately alleged that Defendants made false statements about him during the OCR investigation and, as a result, Plaintiff fails to allege adverse action under Section 504.

Second, even if Plaintiff adequately pled defamation and, in turn, adverse action, he has not alleged sufficient facts establishing a causal connection between the filing of his OCR complaint and the "defamatory" statements. Instead, Plaintiff asks the Court to infer that Defendants retaliated against him for filing the OCR complaint when they were merely responding to the allegations raised in his complaint. The Court declines to do so. Plaintiff has failed to allege a causal connection between his OCR complaint and the adverse action, i.e., Defendants' allegedly defamatory statements.

At bottom, Plaintiff has not alleged sufficient facts demonstrating that he suffered an adverse action or that the adverse action is related to the filing of his OCR complaint.

The Court thus concludes that Plaintiff has failed to state a claim for retaliation in violation of Section 504.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 13) and deny as moot Plaintiff's Motion to File Under Pseudonym (ECF No. 6) and Defendants' Motion to Strike or Opposition to Plaintiff's Supplemental Motion to File Under Pseudonym (ECF No. 23). A separate Order follows. Entered this 25th day of August, 2020.

/s/

George L. Russell, III
United States District Judge